UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

---

UNITED STATES OF AMERICA,

   -v-                                                     Case No: 1:21-CR-00586 (RC)

FRANCIS CONNOR

---

**SENTENCING MEMORANDUM**

DATED:  August 25, 2022                  Respectfully submitted,

                                                           By: JOHN J. GILSENAN, ESQ.
                                                           Assistant Federal Public Defender
                                                           4 Clinton Square, 3rd Floor
                                                           Syracuse, NY 13202

## I.  TALK IS CHEAP . . .

Francis and his friends were upset the election. Like many, Francis vented with his buddies via private Instagram messages. Francis said some angry, violent, and vulgar things. In November, 2020, he traveled with his friends to Washington D.C. for a political rally organized by former president. Despite his online rhetoric, Francis and his friends behaved lawfully and peacefully.

Throughout the fall, Francis continued to chat online with his friends about politics and the 2020 election. The messages were often vulgar, violent, and absurd. Francis and his friends decided to go back to Washington on January 6, 2021 for the "Stop the Steal" rally organized by the former president and his allies.

On January 6, Francis and his friends passed through the magnetometers and into a secure area near the Ellipse. They listened to various speakers and finally the president himself. They were excited by the speakers, but also very cold after spending hours outside on a chilly January day. They headed back to their car for the trip back to New York City.

But once they got back to the car, they found out that there was something happening at the Capitol. They walked back to the area and entered the Capitol building through a broken window. Francis walked into an office and looked at some books on a shelf while a gentleman named "Baked Alaska" was livestreaming. Francis and his friends stopped to take a picture of themselves inside an atrium in the Capitol and left the building. The whole episode lasted roughly 10 minutes.

Back home, Francis and his friends bragged and exaggerated online about

their 10 minutes in the Capitol. Francis commented that the former president should have made violent and threatening comments about the vice president and the House speaker. The messages were ugly rants, but never intended to be seen by anyone other than the three friends.

Eventually reality hit like a ton of bricks. One friend was charged in May before Francis and a third friend were charged in August 2021. The FBI showed up at Francis' parent's home and took him away. Francis was named and shamed in the New York Post.[1] He was arrested, arraigned, and released on pre-trial conditions. But a new chapter in Francis' life had begun.

## II.    . . . AND ACTIONS SPEAK LOUDER THAN WORDS

Francis' actions this past year reflect his true character. He's has been on pretrial supervision for almost a year and hasn't had any issues. In fact, Francis got his current job with Amazon in October 2021 after his pre-trial services officer in Brooklyn told him the company was hiring. Before this case, Francis had no criminal record.

When Francis strolled through an office in the Capitol on January 6, he had no idea it belonged to Senator Jeff Merkley. Amongst his regrets from that day, Francis is ashamed that he disrespected Senator Merkley by traipsing through his office. It's the type of disrespectful behavior Francis loathes in others, so he wrote the Senator an apology letter.[2]

---

[1]    Julia Marsh and Ben Feuerherd, *Two more Brooklyn men charged in Capitol riot*, N.Y. Post, August 31, 2021, https://nypost.com/2021/08/31/two-more-brooklyn-men-charged-in-capitol-riot/

[2]    Exhibit 1, Connor Letter to Senator Merkley.

In addition, Francis sat for a voluntary interview with investigators from the House committee investigating the January 6th attack. He wanted to assist the Committee in understanding his motivations for entering the Capitol that day. With counsel, Francis spent roughly 90 minutes answering questions. He was respectful and gave truthful answers.[3] Ultimately, Francis' answers didn't appear to be helpful to the committee's work, yet Francis made the effort and endured some tough questioning from investigators.

In sum, Francis respectfully asks this Court to judge him on his actions—both the 10 minutes he spent in the Capitol and what he's done since. Francis' online "talk" was cheap, but his actions this past year have shown sincere acceptance of responsibility and have spoken far louder than his words.

### III. THE GOVERNMENT'S ARGUMENTS SHOW A FRIGHTENING CONTEMPT FOR THE FIRST AMENDMENT AND SEEK TO PUNISH FRANCIS MORE HARSHLY BECAUSE OF HIS POLITICAL VIEWS.

In *Brandenburg v. Ohio* (395 U.S. 444 [1969]), the Supreme Court held that the government cannot punish inflammatory speech unless that speech is intended to incite or produce imminent lawless action and is likely to incite or produce such action.

Here, the government spends nearly 35-pages asking the Court to punish Francis more severely because of the contents of his private messages.[4] Private messages that were shared amongst three young men, and in no way sought to

---

[3]   Undersigned counsel after the questioning became repetitive and unnecessarily derisive toward Mr. Connor.
[4]   Gov. Sentencing Memorandum at 23.

4

produce lawless action or imminent violence. The government attempts to fabricate a portrait of Francis as a violent revolutionary in pursuit of a longer jail sentence. Yet, in reality, Francis has no record of violence, nor did he behave violently on January 6 or at any point since.

Also, regardless of whether you agree with the position that President Biden "stole" the election, the private expression of that opinion is clearly protected speech under the First Amendment, and it is disturbing that the government would ask this Court to punish Francis more harshly for that reason. Francis' messages are undoubtedly angry and vulgar, but they were private expressions of hyperbole and frustration never intended for public display. Their connection to the 10 minutes Francis spent in the Capitol is tenuous.

### IV.   "THE GOVERNMENT HAS NO DIRECT EVIDENCE OF CONNOR'S WILLFUL DESTRUCTION OF EVIDENCE."[5]

So why is the government asking this Court to believe that Francis did just that and to punish him more harshly for that reason?[6] Also, Francis wasn't charged with a crime until late August 2021. Almost 8 months passed between January 6 and his arrest. Did Francis know he would be charged? Did he receive notice or process from the government directing him to preserve private messages? He did not. But when an FBI agent asked to see his phone in August 2021, Francis complied and consented to a search.

---

[5]   Gov. Sentencing Memorandum at 15.
[6]   *Id.* at 8, 22, 23.

## V.     CONCLUSION

As this Court knows 18 U.S.C. § 3553 (a) outlines the factors that should be considered in imposing a sentence that is sufficient but not greater than necessary. One factor is the history and characteristics of the defendant. Here, we have a young man with a full-time job and no prior criminal record. A young man who has made a conscious effort to show the Court the sincerity of his words. In sum, we ask the Court to impose the following sentence: 12 months probation, 70 hours of community service, and $500 restitution.[7]

DATED: August 25, 2022

By: JOHN J. GILSENAN, ESQ

Asst. Federal Public Defender
4 Clinton Street
Syracuse, New York

**CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of August, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Ms. Kathryn Fifield, Assistant United States Attorney 555 Fourth Street, N.W. Washington, DC 20530.

/s/ JOHN J. GILSENAN

---

[7]     *Cf. United States v. Benjamin Torre*, 1:21-CR-143 (Mr. Torre spent 15 minutes in Capitol); *United States v. William Jason Sywak*, 1:21-CR-494-2 (Mr. Sywak marched up to the Capitol, spent 20 minutes inside taking pictures and videos.); *United States v. Nicole Prado*, 1:21-CR-403 (Ms. Prado spent 17 minutes in the Capitol); *United States v. Witcher*, 1:21-CR-235.